THE PENNSYLVANIA RD. CO., APPELLEE, *v.* PORTERFIELD,
TAX COMMR., APPELLANT.

(No. 70-499—Decided March 17, 1971.)

*Messrs. Squire, Sanders & Dempsey, Mr. John Lansdale, Jr., Mr. William H. Lutz, Jr., Mr. Henry D. Light* and *Mr. William F. Lahner, Jr.,* for appellee.

*Mr. Paul W. Brown,* attorney general, *Mr. R. A. Malrick* and *Mr. David S. Bloomfield,* for appellant.

*Messrs. Kelley & McCann, Mr. Walter C. Kelley, Jr.,* and *Mr. Fred J. Livingstone,* for *amicus curiae,* the Board of Education, Cleveland City School District.

SCHNEIDER, J. This is the third time we have considered this case, which involves the valuation of the Pennsylvania Railroad Company, for the purpose of its 1966 public utility property tax. R. C. 5727.01 *et seq.* Initially, the Tax Commissioner determined the 1966 value of the railroad's property using a formula which began

with the 1965 tax valuation and ended with a valuation based on adjustments reflecting the cost of certain activities, such as acquisition of new property and disposal of old property, occurring during the ensuing year. That valuation was affirmed by the Board of Tax Appeals.

In *Pennsylvania Rd. Co.* v. *Porterfield* (1968), 16 Ohio St. 2d 136, this court set aside the board's decision, holding that the cost approach alone was improper because it disregarded other factors relevant to the valuation of the property of a railroad for the purpose of the tax in question. See *Floyd* v. *Manufacturer's Light & Heat Co.* (1924), 111 Ohio St. 57. Moreover, we held that the formula which the Tax Commissioner and the board used in arriving at the cost basis was unlawful.

Following that decision, we denied the Board of Tax Appeals' request for additional instructions. After a subsequent hearing, the board concluded that it did not have sufficient evidence to make an intelligent determination and remanded the matter to the Tax Commissioner. Again, the railroad appealed. In *Pennsylvania Rd. Co.* v. *Porterfield* (1970), 22 Ohio St. 2d 94, we held that a remand to the Tax Commissioner was improper and directed the board to make its own determination.

Pursuant to that decision, the board held a hearing wherein it overruled a motion by the Tax Commissioner to require the railroad to make and furnish an itemized list of its property. The board declared it had "no choice" but to determine value upon testimony of the railroad's expert witness at the first hearing who based his opinion of the value of the railroad's property solely by capitalizing the income of the railroad as a whole.

The Board of Tax Appeals, however, did have a choice. It could have instituted its own investigation to determine a proper taxable value for the railroad. Indeed, it had a duty to do so.

R. C. 5717.02 provides, so far as pertinent:

". . . The board may order the appeal to be heard upon the record and the evidence certified to it by the com-

missioner, but upon the application of any interested party the board shall order the hearing of additional evidence, and it may make such investigation concerning the appeal as it deems proper."

Notwithstanding that statute, the board said that "it is obvious that . . . [it had] no choice but to obey the mandate of the Supreme Court of Ohio and to decide the matter on the basis of the testimony and evidence now in the record before us."

R. C. 5717.02 contemplates that the board may consider the matter *de novo*, and R. C. 5717.03 authorizes the board to make its own findings. In effect, the Board of Tax Appeals succeeds to the Tax Commissioner's duty to investigate.

In *Bloch* v. *Glander* (1949), 151 Ohio St. 381, we stated, at pages 386 and 387, as follows:

"This court has repeatedly held that, although the Board of Tax Appeals exercises quasi-judicial functions, it is nevertheless an administrative body.

". . .

"Sections 5611 and 5611-1, General Code [R. C. 5717.02 and 5717.03], contemplate full administrative appeals from the orders of the Tax Commissioner, in which the parties are entitled to produce evidence in addition to that considered by the Tax Commissioner, and the Board of Tax Appeals is authorized to exercise investigational powers to ascertain further facts. . . ." See, also, *Clark* v. *Glander* (1949), 151 Ohio St. 229.

In order to exercise its broad inquisitorial powers, the Board of Tax Appeals is permitted to hire such ". . . employees as are necessary in the exercise of the powers and the performance of the duties and functions which the board is by law authorized and required to exercise, and prescribe the duties of all such employees . . ." R. C. 5703.02(F). Furthermore, R. C. 5703.04(B), authorizes the board, as well as the Tax Commissioner, to "appoint agents and prescribe their powers and duties as provided by Section 5703.17 of the Revised Code. . . ."

While R. C. 5717.02 employs the word "may" in referring to the power of the Board of Tax Appeals to make such investigations "as it deems proper," that word is to be construed as "shall," where a matter of public interest is involved.

"Where authority is conferred to perform an act which the public interest demands, *may* is generally regarded as imperative." *Columbus, Springfield & Cincinnati Rd. Co.* v. *Mowatt* (1880), 35 Ohio St. 284, 287. In *Lessee of Swazey's Heirs* v. *Blackman* (1837), 8 Ohio 5, 19, it was stated that the word "may" means "must" in all those cases where the public is interested, or where a matter of public policy, and not merely of private right, is involved. See, also, *Stanton* v. *Frankel Brothers Realty Co.* (1927), 117 Ohio St. 345.

That the valuation of this railroad, which has taxable property in 56 of the 88 counties of this state, is a matter of public interest is beyond question.

The Board of Tax Appeals based its assessment of the Pennsylvania Railroad upon the same limited approach which we held to be improper in *Pennsylvania Rd. Co.* v. *Porterfield, supra* (16 Ohio St. 2d 136). We held there that the board must consider not merely the cost of the property, but such factors as debt and earnings as well. Conversely, the board may not consider earnings alone, to the exclusion of all other factors relevant to the proper valuation of a regulated public utility.

In the proceedings presently on appeal, the board based its determination upon the computations of a witness who utilized only a capitalization of earnings approach, not the broader format we have heretofore prescribed. See *Pennsylvania Rd. Co.* v. *Porterfield, supra* (16 Ohio St. 2d 136).

The present position of the Board of Tax Appeals is that it has no recourse except to consider the evidence voluntarily submitted by the railroad and the Tax Commissioner, regardless of how wanting that evidence may be. We reject that position because it renders meaningless the statutory duty to investigate.

When the board concluded that it did not have before it sufficient evidence to arrive at a proper assessment of value, it should have investigated further, or demanded that the Tax Commissioner or the railroad furnish additional evidence.

In the consideration of an appeal from the Tax Commissioner, the Board of Tax Appeals is not limited to the record before it, but is required to obtain all information, either from the parties or through independent investigation, necessary to discharge the duty imposed upon it by law to arrive at the true value in money of the Pennsylvania Railroad's property in this state.

This obligation devolves initially upon the Tax Commissioner, and passes upon appeal to the Board of Tax Appeals so that it can arrive at a lawful and reasonable decision.

To the extent that the board in this case failed to discharge that obligation, its decision is unreasonable and unlawful.

Therefore, this cause is remanded to the Board of Tax Appeals for proceedings consistent with this opinion.

*Decision reversed.*

O'NEILL, C. J., DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.

HERBERT, J., concurring. I concur in the judgment in this case, but do not agree that R. C. 5717.02 places upon the Board of Tax Appeals a mandatory duty to make an independent investigation. That section clearly and specifically states an opposite intent of the General Assembly. The investigation is discretionary with the board, as the statute uses not only the word "may," but includes "as it deems proper." Moreover, in another part of the statute, the word "shall" *does* appear, and directs the hearing of additional evidence when requested by "any interested party."

As unambiguously enacted by the General Assembly,

R. C. 5717.02 provides ample machinery for the board to acquire whatever additional evidence may be necessary to implement our mandate in this case. We should not yield to the temptation to rewrite a legislative enactment, even though such judicatory penmanship may appear to provide the momentary resolution of a pesky problem.