[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 622.]

CASA 94, L.P., APPELLEE, *v*. FRANKLIN COUNTY BOARD OF REVISION ET AL.,
APPELLANTS.

[Cite as *CASA 94, L.P. v. Franklin Cty. Bd. of Revision*, 2000-Ohio-3.]

*Taxation—Real property valuation—True value of apartment development—R.C.
5715.19(G) precludes a property owner from testifying about the terms and
conditions of a sale before the Board of Tax Appeals, when.*

(No. 99-1312—Submitted July 6, 2000—Decided September 13, 2000.)

APPEAL from the Board of Tax Appeals, No. 97-S-632.

———————————

{¶ 1} On March 8, 1996, appellant, Board of Education of the Westerville
City School District ("BOE"), filed a property valuation complaint with the
Franklin County Board of Revision ("BOR") for tax year 1995, regarding four
parcels of property improved with an apartment development known as Remington
Station Apartments. In its complaint, the BOE contended that there had been a
recent arm's-length sale of the property for $18,300,000.

{¶ 2} The property owner, CASA 94, L.P. ("CASA"), filed a
countercomplaint stating that the auditor's valuation of $13,329,800 was correct.
In response to the question on the countercomplaint form asking if the property had
been sold within the last three years, CASA stated that the property sold in April
1995 for $18,300,000.

{¶ 3} At the hearing before the BOR, the BOE introduced two exhibits: a
copy of a limited warranty deed from Phoenix Home Life Mutual Insurance
Company ("Phoenix") to CASA, and a conveyance fee statement that set forth a
cash consideration of $18,300,000.

{¶ 4} To refute this, CASA's counsel proffered a copy of a document with
some attachments entitled "Agreement for Purchase and Sale of Real Property" by
and between Phoenix and CASA, dated April 7, 1995, without calling a witness as

to the document.  Counsel for the BOE objected to the proffer and to the narrative given by CASA's counsel of what the documents showed.

{¶ 5} The only person testifying at the BOR hearing on behalf of CASA was a non-employee agent, William M. McVeigh, who admitted that the only information he had concerning the transaction was what someone had told him. McVeigh represented that he would be sending certain recorded public records to the BOR.  However, the only document McVeigh sent to the BOR was a non-recorded copy of the Amended and Restated Agreement of Limited Partnership of CASA 94, L.P., with some attachments, dated April 5, 1995.

{¶ 6} A handwritten note on McVeigh's transmittal letter states that the BOE objected and that the documents "[were] not relied upon by BOR."  The BOR determined that the property should be valued at $18,300,000.

{¶ 7} CASA filed an appeal with the BTA.  The only witness presented by CASA at the BTA hearing was Brian Murdy, a senior vice president of Phoenix Realty Advisers and a managing director of Phoenix, the seller of the Remington Station property.  At the start of Murdy's testimony, counsel for the BOE objected on the basis of R.C. 5715.19(G).  The BTA reserved ruling on the objection. However, in its decision, the BTA overruled the objection and admitted Murdy's testimony.

{¶ 8} Murdy testified that the Franklin County property was included as one of ten properties sold by Phoenix to CASA.  Murdy explained why Phoenix sold the property, identified the entities comprising CASA, and how Phoenix and CASA determined the sale price.

{¶ 9} Murdy was not asked to identify any documents at the BTA hearing, and CASA did not enter any documents into evidence.  The BTA found that the documents presented by CASA to the BOR were not considered by it because CASA did not provide a witness at the BOR hearing to authenticate or lay a proper foundation for the documents.

**{¶ 10}** At the close of the BTA hearing, the BOE presented certified copies of the deed and conveyance fee statement for the property showing a sale price of $18,300,000. Over objection, the BTA admitted these documents into evidence.

**{¶ 11}** The BTA found that there was a relationship "between the buyer, a limited partnership, and the seller, a 9% owner and limited partner of the buyer." In addition, the BTA found that the sale may have been part of a bulk sale and that there was no evidence that the property was offered for sale on the open market. The BTA consequently found that the sale was not an arm's-length transaction and, therefore, it could consider the auditor's valuation set forth on the property record cards in the transcript from the BOR. Accordingly, the BTA adopted the auditor's valuation of $13,329,800 as the true value.

**{¶ 12}** This cause is now before this court upon an appeal as of right.

—————————————

*Wayne E. Petkovic,* for appellee.

*Ronald J. O'Brien,* Franklin County Prosecuting Attorney, *Matthew H. Chafin* and *Paul M. Stickel*, Assistant Prosecuting Attorneys, for appellants Franklin County Board of Revision and Franklin County Auditor.

*Teaford, Rich, Crites & Wesp*, *Jeffrey A. Rich* and *James R. Gorry*, for appellant Board of Education of the Westerville City School District.

—————————————

**Per Curiam.**

**{¶ 13}** The appellants contend that R.C. 5715.19(G) precludes a property owner from testifying about the terms and conditions of a sale before the BTA if (1) the owner did not testify or otherwise present admissible evidence concerning the sale to the board of revision and (2) the owner does not show good cause for the failure to do so. We agree.

**{¶ 14}** R.C. 5715.19(G) provides:

"A complainant shall provide to the board of revision all information or evidence within the complainant's knowledge or possession that affects the real property that is the subject of the complaint. A complainant who fails to provide such information or evidence is precluded from introducing it on appeal to the board of tax appeals or the court of common pleas, except that the board of tax appeals or court may admit and consider the evidence if the complainant shows good cause for the complainant's failure to provide the information or evidence to the board of revision."

{¶ 15} This court has had occasion to rule on R.C. 5715.19(G). In *Coventry Towers, Inc. v. Strongsville* (1985), 18 Ohio St.3d 120, 18 OBR 151, 480 N.E.2d 412, the city revised a report it had presented to the board of revision before the city presented it to the BTA. The property owner objected to the admission of the revised appraisal. Nevertheless, the BTA admitted the city's revised appraisal into evidence.

{¶ 16} On appeal, we affirmed the BTA's ruling because the property owner presented no evidence that the city had the information contained in the revised appraisal within its knowledge or possession when it appeared before the board of revision. In fact, the appraiser testified that much of the information presented in the revised appraisal "was obtained as a result of the hearing before the board of revision." *Id.* at 122, 18 OBR at 152, 480 N.E.2d at 413. In applying R.C. 5715.19(G) we held, "This provision requires a complainant before the board of revision to submit all pertinent information affecting the property in question within his knowledge or possession at that time." *Id.* at 121, 18 OBR at 152, 480 N.E.2d at 413.

{¶ 17} CASA's counsel stated that Murdy's testimony was being presented only "to amplify the documents that are already of record." The documents referred to by CASA's counsel were those presented to the BOR and contained in the transcript sent to the BTA, but "not relied on by the BOR."

{¶ 18} The BTA accepted Murdy's testimony, stating that it was "merely intended to amplify evidence previously submitted to, but not considered by the BOR," and that it was not "the type of 'new' information contemplated" by R.C. 5715.19(G).

{¶ 19} The BTA erred because it accepted Murdy's testimony "to amplify evidence previously submitted to, but not considered by the BOR." CASA proffered the documents at the BOR, which had not admitted them into evidence. The BTA observed that the BOR did not consider the documents "because appellant [CASA] did not provide a witness at the BOR hearing to authenticate or lay a proper foundation for these documents." The BTA should have excluded Murdy's testimony because it did not pertain to any evidence or information provided to the BOR. Further, CASA did not attempt to show good cause why it had not presented the evidence or information Murdy testified about to the BOR.

{¶ 20} Accordingly, we hold that the decision of the BTA is unreasonable and unlawful and it is reversed.

*Decision reversed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

———————————